350 P.2d 988

STATE of Arizona ex rel. Robert MORRISON, Attorney General, Appellant,

v.

Raymond D. THELBERG and Lilian Thelberg, his wife, Appellees.

No. 6713.

Supreme Court of Arizona.

April 6, 1960.

320

Robert Morrison, Former Atty. Gen., Wade Church, Present Atty. Gen., Leslie C. Hardy, Chief Asst. Atty. Gen., Charles L. Hardy, Sp. Asst. Atty. Gen., Jay Dushoff, Asst. Atty. Gen., for appellant.

· Hall, Catlin & Jones, Tucson, for appellees.

Gust, Rosenfeld, Divelbess & Robinette, Snell & Wilmer, Jennings, Strouss, Salmon & Trask, Evans, Kitchel & Jenckes, Phoenix, Cusick, Watkins & Frey, Darrow, D'Antonio, Hayes & Morales, Lohse, Donahue & Bloom, Evo DeConcini, Conner, Jones & Murphy, Dunseath, Stubbs, Morse & Burch, Tucson, amici curiae.

PHELPS, Justice.

The original decision in this case went down October 14, 1959. See State ex rel. Morrison v. Thelberg, 86 Ariz. 263, 344 P.2d 1015. A motion for rehearing was granted upon the question of the owner's right to compensation for the impairment of his right of access to the new controlled-access highway located upon the old conventional road right of way. Several splended amici curiæ briefs were permitted to be filed and the question was considered of sufficient importance to grant requests for argument on rehearing.

Counsel having been heard and in view of our decision to overrule, in part, our previous cases upon which the above-mentioned question was decided, we believe it will better clarify the questions involved by substituting this decision in lieu of the original.

The State of Arizona, plaintiff, brought suit to condemn for highway purposes certain land belonging to Raymond D. Thelberg and Lilian Thelberg, his wife, defendants. Judgment was rendered fixing the damages for the condemnation, and from such judgment the State of Arizona has appealed.

The facts material to a determination of the case may be stated as follows: the defendants are the owners of a parcel of property located approximately 170 feet easterly of the intersection of the Tucson-Benson Highway with Craycroft Road in Pima County. Defendants' property is situated on the north side of and abuts on the Tucson-Benson Highway. Prior to the condemnation proceedings defendants' property was in the shape of a parallelogram, the north and south boundaries were 185 feet long, the south boundary being the one that fronts on and abuts the highway, and the east and west boundaries were 308.54 feet long. The grade of the old Tucson-Benson Highway was approximately 21 inches above the defendants' property and defendants had direct and unlimited access thereto. At that time the property was being used by the defendants as a motel, the principal buildings consisting of a residence and three duplex motel units.

Prior to January 17, 1957, the Tucson-Benson Highway was a conventional highway. On January 17, 1957, the Arizona State Highway Commission adopted a resolution authorizing the widening and reconstruction of a portion of said highway, and according to the map and construction plans attached to the resolution, the State proposed to construct a controlled-access highway with separate through roadways for both east and westbound traffic. No access was to be permitted to or from these through roadways except at certain designated points. Frontage roads were to be constructed and these will run parallel to the through roadways. The frontage road in front of defendants' property will be a one-way road going west, the grade of which will be from one to approximately two and one-half feet above defendants' property. Defendants will have ready access to this frontage road.

Entrance to the through roadways will be effected by means of traffic interchanges. In so far as the defendants' property is concerned the nearest interchanges are at the intersections of Craycroft Road 170 feet westerly of their property and Wilmont Road approximately one mile easterly of their property. Both of these roads will remain at their present grade and the through roadways will bridge over them.

At Craycroft Road the grade of the through roadways will be raised approximately 21 or 22 feet above the grade of Craycroft Road. In front of the defendants' property the grade of the westbound through roadway will be raised approximately 20 feet above the westbound frontage road. The change of grade of the through roadways will lie within the right of way of the Tucson-Benson Highway as it existed prior to the commencement of this condemnation action. Motorists desiring to leave or enter the through roadway will do so by one-way ramps.

After construction of the controlled-access highway is completed a westbound traveler on the Tucson-Benson Highway would reach defendants' property by leaving the westbound through roadway approximately 1,400 or 1,500 feet east of Craycroft Road and driving on the ramp to the frontage road which serves the defendants' property. An eastbound traveler on the eastbound through roadway would have to drive approximately one mile easterly from the intersection of Craycroft Road with the Tucson-Benson Highway. He would cross over to the westbound through roadway and then proceed westerly to the previously mentioned ramp which would enable him to drive onto the frontage road serving the defendants' property.

· A traveler leaving the defendants' property and desiring to continue to Tucson would enter the frontage road and drive westerly past the intersection of the frontage road with Craycroft Road approximately 1,700 feet until he entered a ramp leading onto the westbound through roadway. If the traveler desired to travel east toward Benson he would leave defendants' property by driving onto the frontage road and would proceed 250 or 300 feet westerly to Craycroft Road. He would then drive on Craycroft Road under the through roadways to the eastbound frontage road. He would then drive easterly on the eastbound frontage road approximately 1,400 or 1,500 feet until he reached the ramp by which he would enter the eastbound through roadway. A barrier fence is to be constructed between the westbound frontage road and the through roadway.

In order to construct the frontage road on the north side of the highway it was necessary to acquire .24 acres of defendants' property. The State therefore condemned an irregularly-shaped strip of land averaging approximately 54 feet in depth across the south boundary of defendants' property.

The only issues before the lower court were the amounts due defendants for the portion of the premises and the improvements thereon taken and the severance damage to the remaining property, and the impairment of access to the new highway. The court awarded $18,500 damages for the

property taken by the State and *$10,750 for damages to the remaining property.* As to the $10,750 figure which represents damages to the remaining property the trial court had this to say:

"The court feels that the principal question to be decided in this case is whether or not the defendant-owners are entitled to damages for impairment of access, or, is impairment of access compensable. If such is not the case, the court finds that the defendants' damages are in the sum of $18,500.00, but the court feels, after careful reading of the briefs, an impairment of access is compensable, and Defendants are damaged in the sum of $29,250.00".

In its appeal the State does not question the award of $18,500 for the property actually taken, but asserts that the trial court erred in awarding defendants damages in the sum of $10,750 for injury caused by an impairment of access for the following reasons: (1) the evidence did not establish that there had been an impairment of access, (2) under the evidence the defendants enjoy the same access to the Tucson-Benson Highway after the taking which they have always enjoyed, (3) the changing of grade of an existing highway does not constitute such an impairment of access as to entitle an abutting property owner to damages, (4) the control of access to a controlled-access highway does not constitute a taking or damaging of property which would entitle abutting property owners to compensation.

There is unquestionably evidence in the record to support the finding made by the trial court that the access from the main Tucson-Benson Highway to defendants' remaining property is impaired by the construction of the improvements in the manner proposed by the State. Therefore, the sole question presented by this appeal is: does an abutting property owner's right of access to a public highway entitle him to compensation for severance damages where part of his land is taken in order to convert a conventional highway into a controlled-access highway so that access to and from his remaining property is controlled by a frontage road.

After having read the numerous briefs including those of amici curiae, we have arrived at the conclusion that our reliance upon the rule laid down in In re Forsstrom, 44 Ariz. 472, 38 P.2d 878, and reaffirmed in Grande v. Casson, 50 Ariz. 397, 72 P.2d 676, led us into error in our original decision insofar as it relates to the right of an owner of property abutting a public highway to compensation for the destruction or impairment of the owner's access to such highway. The Court stated in that decision that such an act was non-compensable.

■ ˙An examination of many authorities from various jurisdictions convinces us that the weight of authority in the United States is to the effect that either the destruction or the material impairment of the access easement of an abutting property owner to such highway is compensable. We therefore overrule the principle laid down in In re Forsstrom and Grande v. Casson, supra, which declared the non-compensability of an abutting property owner for the destruction or substantial impairment of his right of access to such highway. We also reject the reasoning upon which the rule rests i. e., that there is a presumption of payment. The rule to the contrary, supported by the weight of authority, is based upon the fact that an abutting property owner to a highway has an easement of ingress and egress to and from his property which constitutes a property right. Our State Constitution, Art. 2 § 17, A.R.S., prohibits the taking or damaging of private property for public use without just compensation. It follows that the State can neither take nor damage said easement of ingress or egress of an abutting property owner without just compensation.

■ The case of State ex rel. Merritt v. Linzell, 163 Ohio St. 97, 126 N.E.2d 53, states that an owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property which latter right may not be taken away or destroyed or substantially impaired without compensation therefor. This rule was reaffirmed in Starr v. Linzell, Ohio Com.Pl., 129 N.E.2d 659, and has been enunciated in at least the following cases: Coyne v. City of Memphis, 118 Tenn. 651, 102 S.W. 355; Knox County v. Lemarr, 20 Tenn.App. 258, 97 S.W.2d 659; Sharber v. City of Nashville, 27 Tenn. App. 625, 183 S.W.2d 777; Blount County v. McPherson, 268 Ala. 133, 105 So.2d 117; Siemers v. St. Louis Electric Terminal R. Co., 348 Mo. 682, 155 S.W.2d 130; City of Cannelton v. Lewis, 123 Ind.App. 473, 105 N.E.2d 911, 111 N.E.2d 899; Lane v. San Diego Electric R. Co., 208 Cal. 29, 280 P. 109; Strehlow v. Mothorn, 100 Cal.App. 692, 280 P. 1021; Department of Public Works and Buildings v. Wolf, 414 Ill. 386, 111 N.E.2d 322; State v. Calkins, 50 Wash.2d 716, 314 P.2d 449; State, By and Through State Highway Commission v. Burk, 200 Or. 211, 265 P.2d 783; 43 A.L.R.2d Annotation 1072; McMoran v. State, Wash., 345 P.2d 598.

■ It seems to be the law, however, that where land is condemned or purchased for the construction of a controlled-access highway upon a new right of way alongside the old road that an abutting owner of land on the old highway, which is retained as a service road, cannot recover damages

for destruction or impairment or loss of access for the reason that his access to the old highway has not been disturbed in the slightest degree. State v. Peterson, 134 Mont. 52, 328 P.2d 617–628. This is conceded in one of the amici curiæ briefs filed by Attorney Dunseath et al., and which appears to have fairly presented a splendid brief on the entire subject. This does not mean however that the abutting owner may not recover severance damages. It simply means that destruction or impairment of access to the new highway is not compensable.

This is one of the contentions of the State and counsel for the State argues that under the above rule if the State had built its controlled-access highway on the south side of the old Tucson-Benson Highway instead of on the north side thereof, Thelberg would not have been entitled to recover a penny from the State for *destruction or impairment of access for the reason stated in State v. Peterson, supra,* and it is well supported by other decisions hereinafter cited. This appears absurd at first glance but it is based upon sound reasoning as will appear from cases hereinafter cited.

■ When the controlled-access highway is constructed upon the right of way of the conventional highway and the owner's ingress and egress to abutting property has been destroyed or substantially impaired, he may recover damages therefor. The damages may be merely nominal or they may be severe. Other means of access such as frontage roads as in the instant case may be taken into consideration in determining the amount which would be just under the circumstances. Knox County v. Lemarr, 20 Tenn.App. 258, 97 S.W.2d 659. Other means of access may mitigate damages, State v. Ward, 41 Wash.2d 794, 252 P.2d 279, but does not constitute a defense to the action however. Golden v. Louisville & N. R. Co., 228 Ky. 134, 14 S.W.2d 379.

■ The measure of damages for the destruction or impairment of access to the highway upon which the property of an owner abuts is the difference between the market value of the abutting property immediately before and immediately after the destruction or impairment thereof. The damages awarded the abutting landowner for destruction or impairment of access therefore is based, not upon the value of the right of access to the highway, but rather upon the difference in the value of the remaining property before and after the access thereto has been destroyed or impaired. This in turn is based upon the highest and best use to which the land involved is best suited before and after the right of access is molested. State, By and Through State Highway Commission v. Burk, supra; Boxberger v. State Highway Commission, 126 Colo. 526, 251 P.2d 920.

Let us apply the above rules of law to the facts in the instance case bearing in mind

that a portion of Thelberg's property was taken by the State for the purpose of constructing a frontage road along the north side of the controlled-access road on the old right of way.

■ The trial court found as a fact that Thelberg's access to the new controlled-access highway had been substantially impaired. It found that the frontage roads constructed parallel to the controlled-access highway afforded access thereto a distance of 1,400 feet from his property; that the improvements upon Thelberg's property at the time of taking consisted of his residence, three duplex units and various other improvements; that in the condemnation proceedings the State took 0.24 acres more or less, destroying his residence and the front duplex unit, the market value of which the court fixed at $18,500.

The court further found that the whole property prior to its taking by the State was being put to the highest and best use to which it was then susceptible, to wit: the motel business. That since the taking the highest and best use to which the remaining portion thereof can be put is for residential purposes of an inferior quality. It further found that the remaining property was greatly damaged by reason of the impairment of the owner's access to the controlled-access road, and that the difference in its market value before and after such impairment was the sum of $10,750.

It will be seen from the foregoing findings of fact and conclusions of law reached that the trial court applied the proper measure of damages in arriving at the amount to be awarded Thelberg for the impairment of his access to the controlled-access highway. It is also apparent from its findings that the court in arriving at the amount fixed by it, took into consideration the existence of a frontage road constructed by the State furnishing Thelberg access to the new highway at a distance of 1,400 feet from his property.

■ There is a decided conflict in the evidence relating to the market value of the remaining property before and after the condemnation and taking of a portion of Thelberg's property and impairment of his access to the controlled-access highway. We are therefore bound by its findings of fact on that issue.

Judgment affirmed.

STRUCKMEYER, C. J., and UDALL, JOHNSON and BERNSTEIN, JJ., concurring.