442 P.2d 835

DEFNET LAND & INVESTMENT CO., an Arizona corporation; Gordon McDowell, a/k/a Charles Gordon McDowell, and Juanita Fern McDowell, his wife; Al J. Defnet and Lena J. Defnet, his wife; Fortner D. Bell, as his sole and separate property; and Charles R. Lowell, a widower, Appellants,

v.

The STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellee.

No. 8312.

Supreme Court of Arizona.

In Banc.

July 3, 1968.

Hughes & Hughes, Phoenix, for appellants.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, former Atty. Gen., H. K. Mangum, Special Asst. Atty. Gen., Flagstaff, for appellee.

STRUCKMEYER, Justice.

This appeal arises out of an action brought by the State of Arizona to acquire the necessary right-of-way for the controlled access highway Interstate 40. Judgment for defendants-condemnees was entered in the superior court pursuant to a jury's verdict and defendants, being dissatisfied with the amount that the jury fixed as the value of the land taken, appeal.

The condemnation grew out of the conversion of U.S. 66 to U.S. Interstate 40 between Williams and Flagstaff, Arizona. Defendants' property before the taking consisted of a single tract of 119.83 acres without improvements. Two thousand feet of the tract fronted on Highway 66. The State took 13.10 acres from the north end of the tract, severing one parcel of .86 acre from the remaining approximately 106 acres. The new highway, Interstate 40, is a controlled access highway. As a consequence, defendants lost all direct access to Highway 66 except from the .86-acre tract. About 200 feet to the west of the defendants' property an interchange was constructed. The south tract had access to Interstate 40 only by means of the interchange whereas, as stated, before it had direct access from 2,000 feet of frontage on Highway 66.

There was a wide divergence of opinion as to valuation. Defendants' expert witness testified that the value of the land taken was $53,690. The State's appraisers Ball and Saunders testified to a valuation of $9,825 and $10,330, respectively. Since the jury awarded damages in the amount of $10,000, and that amount is commensurate with the valuation fixed by the State's witnesses, it is evident that basically the jury accepted the State's evidence. Defendants' position is that the State's concept of the appropriate measure of damages for the taking was fundamentally erroneous resulting in inadequate damages and, therefore, the judgment of the court and the jury's verdict should be reversed.

Defendants first complain that the State's witnesses did not take into consideration the highest and best use to which the property was adapted. Both of the State's witnesses acknowledged that frontage along Highway 66 had commercial valuation, although they disagreed as to the extent. Both testified that the remainder, after the taking, had value only for homesites. In arriving at the appraised value, the State's experts considered defendants' parcel of land as a single unit and ascribed to it an average per acre value. The valuation was arrived at by comparison with other tracts of land as single parcels. For example, in the case of the witness Ball, the value before the taking was calculated as $90,563, an average value of $750.00 an acre. The value of the land taken was $9,825 and the remainder $80,738. Thus the 13.10 acres taken was arbitrarily also assigned the value of $750.00 an acre.

The rule in Arizona is that, in eminent domain, valuation is to be determined by the market value of the property—by what a willing buyer would pay and a willing seller would take. See, e. g., City of Phoenix v. Consolidated Water Co., 101 Ariz. 43, 415 P.2d 866. The equivalent in money which places the owner in as good a position financially as he would have been if his property had not been taken is "just compensation" within the meaning of Arti-

cle II, § 17, Constitution of Arizona, A.R.S.

Palpably, the State's method of evaluation is not just compensation. We said in State ex rel. Morrison v. Jay Six Cattle Co., 88 Ariz. 97, 353 P.2d 185:

"'It follows that prior sales made on an acreage basis which reflected the use of the property for cattle grazing purposes would not necessarily be determinative of the basis upon which the property, which fronted on a highway and had direct access thereto, would be valued for its best use as commercial and investment property." 88 Ariz. 103, 353 P.2d 189.

Nichols puts it as:

"In assessing the value of the land taken as part of the entire tract it is not proper merely to compute the percentage value on the basis of an artificial average unit value for the entire tract unless the actualities of the case accord with such coverage value. It may be that the part taken is the most valuable part of the tract considered from a qualitative point of view. To attribute an average unit value thereto which is based in part on the lower value of the balance of the tract is inequitable to the owner in a double aspect of the situation. It attributes a value to the part taken which is lower than its actual value and it attributes a higher ultimate value to the remainder area then its actual value, thereby reducing his recovery as to both factors below his actual damages." Nichols, Eminent Domain, 3rd Ed., Vol. 4, § 14.231, p. 545.

All witnesses acknowledged that the acreage fronting on Highway 66 had commercial valuation and that, by the construction of Interstate 40, the commercial frontage was taken for the highway. While ordinarily in a tract of this size the acreage to the rear would be promoted to frontage acreage and thus there would be no actual loss in commercial acres, the evidence indicates that, because Interstate 40 is a controlled access highway, the remaining acres

of defendants' tract were suitable only for homesites.

In People v. Loop, 127 Cal.App.2d 786, 274 P.2d 885, the California court quoted with approval from Green v. Board of Commissioners, 163 La. 117, 111 So. 619, in part, as follows:

"'* * * But in our opinion it is not a mere matter of arithmetic. It is quite true that the total value of the whole land must be taken to be its assessed value; but it does not follow that each acre of land in a single tract must be taken to have exactly the same value as every other acre therein; that acres of arable land and acres of marsh land, acres of wooded land, and acres of bare land, all have the same value; that orchards and vineyards are not to be distinguished from stonelands and pastures merely because they are all included in the one tract. On the contrary, we think that the relative worth of the lands taken, as compared to that of the rest of the tract, should be considered, and proper allowance made for the difference in values.'" 274 P.2d at 893.

See also Transwestern Pipe Line Co. v. Yandell, 69 N.M. 448, 367 P.2d 938. In the instant case, since within the 13.10 acres condemned there was included the greater part of the 2,000 foot frontage on Highway 66, all of defendants' commercial acreage was taken except the .86-acre tract but compensation was awarded only at the average valuation of the commercial and noncommercial acreage.

■ We recognize the State's argument that defendants did not object to the competency of either Saunders' or Ball's testimony in the court below. Ordinarily, we would not consider a claim of error where the trial court was not given the opportunity to correct the error prior to the appeal, but the method of evaluation by the appraisers for the State is so fundamentally unfair and unjust as to permit of no other conclusion than that a retrial of the cause is required.

This brings us to the second problem which is posed as a lack of severance damage but which we believe may be summarized as the refusal of the State's appraisers to assign any damages for the destruction or loss of the defendants' right of direct access to the highway. The rule in this state that the destruction of direct access to a public highway constitutes a damaging of property within the meaning of the Constitution of Arizona, Article II, § 17, has been repeatedly pronounced and applied. State ex rel. Herman v. Wilson, 103 Ariz. 194, 438 P.2d 760; State ex rel. Morrison v. Jay Six Cattle Co., supra; State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988.

As pointed out, the defendants' property prior to the taking had 2,000 feet of frontage with direct access to Highway 66. After the taking and the fencing off of the highway from defendants' property to establish the controlled access highway, Interstate 40, both appraisers for the State valued the remainder of defendants' land as suitable for homesite purposes only. The State points to the holding of State ex rel. Morrison v. Thelberg, supra, 87 Ariz. 318, 350 P.2d 988, that the measure of damages awarded for destruction or impairment of access must be based upon the difference in the value of the abutting property before and after the taking. It is urged that this was the exact approach used by the State's appraisers. We do not agree.

An examination of the testimony of the State's witnesses shows that they first valued defendants' property before the taking as an entire unit and then took out 13.10 acres in the proportion that the 13.10 acres bear to the total acreage. No effort was made whatsoever to apply the language of Thelberg by independently evaluating the remaining acreage in the condition it was in after the taking, that is, with its reduced access to the public highway.

The State quotes from the witness Saunders who testified that defendants' property was not damaged by the fencing of the right-of-way because, "It has a different access, but I believe it is adequate for its highest and best use." This answer was, of course, made in the light of the witness' testimony that the highest and best use after the taking was that of homesites. But is was the fencing off from the highway (the taking of the access) which changed the use from commercial to homesites. If the substitute access was adequate for the land's highest and best use as homesites after the taking, this does not answer the fundamental question which the jury had to resolve—that is, what was the market value of the property after the taking measured by its highest and best use as if it had the same access which it had prior to the taking. We are compelled to agree that the basic concept of the State's measure of damages is wholly incorrect and its acceptance by the jury can be nothing less than fundamental error.

Appellants further complain of certain matters arising out of the cross-examination of a codefendant with respect to a sale of the codefendant's property occurring some two years after the commencement of the condemnation proceedings. Since the codefendant has not prosecuted an appeal and the judgment insofar as it relates to him has become final, it is apparent the asserted error will not occur on a retrial. We do not, therefore, find it necessary to consider that question.

Judgment reversed.

UDALL, V. C. J., and BERNSTEIN and LOCKWOOD, JJ., concur.

McFarland, Chief Justice (specially concurring):

I concur in the reversal of this case, but upon a different ground from that stated by the majority. I pointed out in my dissent in State ex rel. Herman v. Wilson and Finley, 103 Ariz. 194, 438 P.2d 760, that:

"I feel that now is the time, and this is the case, to reconsider our past decisions on the question of compensation for impaired access, when applied to the new type of high-speed limited-access highways now being built. The old rules are

**392**

simply not suitable for these super-high-ways, and the trend of the more recent cases is to so hold. * * *"

It is just as difficult to make such a determination under the old rules as it is for the Highway Department to try to patch up an old out-moded highway to meet the needs of the traveling public when a new one should be constructed. I am of the opinion that the case should be retried under the principle of law enumerated in my dissent in State ex rel. Herman [Highway Department] v. Wilson and Finley, supra.