488 P.2d 180

**CITY OF TUCSON, a municipal corporation, Appellant,**

v.

**Eugene C. RICKLES and Mildred Rickles, husband and wife, Appellees.**

**No. 2 CA–CIV 928.**

Court of Appeals of Arizona, Division 2.

Aug. 31, 1971.

Rehearing Denied Sept. 24, 1971.

Review Granted Oct. 19, 1971.

Herbert E. Williams, City Atty., by J. Dan O'Neill, Asst. City Atty., Tucson, for appellant.

Stubbs & Stephens, P. C., by Robert C. Stubbs, Tucson, for appellees.

HOWARD, Judge.

This is an appeal by the City of Tucson, hereinafter referred to as the City, from a judgment entered in eminent domain action.

Appellees are the owners of a trailer park located on West Prince Road, Tucson, Arizona, known as Bermuda Gardens Mobile Home Court. In the before situation, property consisted of 85 trailer spaces. In addition to the trailer spaces there are improvements on the property consisting of a well, which supplied the water to all of the trailer park, a swimming pool, a recreation hall, an office building, a house, and two separate laundry facilities, each with drying yards, and four shuffle board courts. There were also roadways within the park.

The City took fifteen feet of the frontage along West Prince Road which consisted of 8,718 square feet. Included in the take were six trailer spaces, trees and shrubs.

The case was tried to the court on the issue of damages only. Judgment was entered in the landowners' favor in the sum of $15,600 for the land and improvements taken and $17,500 severance damages.

The City presents two questions to this court, to-wit: (1) In a partial taking under eminent domain, is it proper to measure the value of the part taken by a standard other than the value of the land taken and the value of the improvements located within a taking? (2) In an eminent domain action, is evidence of an improvement district assessment, and the amount and alleged defect thereof, properly admissible?

## EVIDENCE OF THE IMPROVEMENT DISTRICT ASSESSMENT

It is the City's position that it is improper to introduce evidence regarding an improvement assessment levied against the remainder property in a trial for a partial taking under eminent domain.

In the case of Moschetti v. City of Tucson, 9 Ariz.App. 108, 449 P.2d 945 (1969) we stated, in dicta, that special assessments, as such, are not elements of damage in condemnation proceedings but

that evidence as to the existence or non-existence of a special assessment on the land remaining after a portion has been taken by eminent domain is admissible for any bearing it may have upon the after value of the property. While review was denied by our Supreme Court in the case of Moschetti v. City of Tucson, supra, such denial is not tantamount to affirmance. City of Tempe v. Del E. Webb Corp., 13 Ariz.App. 597, 480 P.2d 18 (1971). Our examination of this dicta in Moschetti v. City of Tucson, supra, indicates to us that the language in the dicta is unfortunate and we therefore exercise the same judicial surgery which we used in City of Tempe v. Del E. Webb. Corp., supra, to remove the infirm portions of that decision.

 Although there are times when a special assessment may be considered in valuing the remainder of the landowner's property, this is not one of those situations. Local assessments or special taxes for the payment of the cost of certain kinds of public improvements commonly prevail and are generally sustained under the exercise of the power of taxation. They have no relation to the exercise of the power of eminent domain, and hence, constitutional provisions respecting this right have no application. In re Public Service Electric & Gas Co., 18 N.J.Super. 357, 87 A.2d 344 (1952). As everyone holds his property subject to the police power, everyone also holds his property subject to the taxation power of the state. Although in the case of Moschetti v. City of Tucson, supra, the court stated that the special assessment could not be considered as a special item of damages, yet, even allowing it to be considered in valuing the remainder accomplishes the same thing and it is a distinction without difference. The fallacy of allowing assessments to be taken into consideration in valuing the property in after situation, absent special situations which are hereinafter set forth, can be better understood by hypothesizing a street widening situation wherein the property owners on one side

of the street have none of their property taken and the property owners on the other side of the street have ten feet of their property taken. Those property owners who have none of their property taken are still burdened with the payment of the assessments, whereas those who have the ten feet taken would be able, under the rule espoused in Moschetti v. City of Tucson, supra, to recoup their assessment and end up, perhaps, paying nothing for the assessment. The injustice of the situation is further aggravated by the fact that in improvement districts it is quite common that those persons who do not border on the improvement still must pay a proportionate but lower share of the assessment. These persons would still be burdened with the assessment on their lands whereas those whose property actually bordered on the improvement, part of which was taken, could conceivably end up paying nothing for the assessment. Such a situation is intolerable without even considering the fact that a rule such as that laid down in Moschetti v. City of Tucson, supra, could completely frustrate the taxing power of a municipality in street widening cases. We therefore hold that the general rule is that evidence of special assessments is not admissible.

 There is an exception to this general rule which would arise in a case where the condemning authority is claiming that there are special benefits deductible against the damages to the remainder. In such a case if evidence of the special assessment is not taken into consideration the landowner would, in effect, be paying twice for the same benefit. Benefits accruing to land which has been damaged, or part of which has been taken for the construction of a public improvement, cannot be set off against the compensation awarded for the taking or injury where the same benefits have been made the subject of a special assessment, irrespective of whether such assessment has already been paid by the owner or is still open to payment. See cases annot. 145 A.L.R. pp. 136–139.

Since the City in the case sub judice did not claim any setoff as special benefits [1] it was error to allow testimony as to special assessments.

## THE LANDOWNERS' METHOD OF COMPUTING DAMAGES

The City claims that the landowners' testimony regarding damages was erroneous. The City, in the lower court, did not object to this testimony as to damages nor did it move for a new trial alleging such error. Normally the failure to object below precludes appellate consideration of the issue. However this is not true when there is fundamental error. As was stated in the case of Defnet Land & Investment Co. v. State ex rel. Herman, 103 Ariz. 388, 442 P.2d 835 (1968):

. * * * * * *

"Ordinarily, we would not consider a claim of error where the trial court was not given the opportunity to correct the error prior to the appeal, but the method of evaluation by the appraisers for the State is so fundamentally unfair and unjust as to permit no other conclusion than that a retrial of the cause is required." 103 Ariz. at 390, 442 P.2d at 387.

If an incorrect method of valuation by the State is fundamental error because it denies the landowners their right of just compensation guaranteed by Article 2, § 17, Arizona Constitution, A.R.S., it also follows that a similar gross error by the landowners' appraiser would also constitute fundamental error. The term "just compensation" means just not only to the party whose property is taken for public use but also "just to the public" which is to pay for it. People ex rel. Dept. of Public Works, v. Pera, 190 Cal.App.2d 497, 12 Cal.Rptr. 129 (1961). Just compensation should neither enrich the individual at the expense of the public nor the public at the expense of the individual. In re Mackie's

Petition, 362 Mich. 697, 108 N.W.2d 755 (1961).

The method used by the landowners' appraiser in arriving at the value of the part taken is patently erroneous. He came to the conclusion that the entire fair market value of the Bermuda Gardens Trailer Park on October 16, 1970, was the sum of $233,750. Since the trailer park had 85 trailer spaces he divided this figure by 85 and arrived at a per site value of $2,750. In other words, the entire value of the property was attributed to the trailer spaces only. Then in order to arrive at the value of the part taken he simply multiplied six times $2,750 in order to arrive at damages for the six spaces taken by the City for a total of $16,500. [2] The fallacy of this method is clear. Included in the value of $2,750 per trailer space was also the value of all the other improvements and all the other land. Thus, the City was compelled to pay not only for the six trailer spaces but also for a proportionate share of the swimming pool, recreation hall, laundry rooms, house and other land located on the property. To further demonstrate the incorrectness of this method of computing damages, if the City had taken all 85 trailer spaces it would have, under the landowners' theory, taken the entire value of the property. Yet, we know this is not true because of the other improvements left on the land which would not have been taken. By failing to make adjustments by subtracting out of the value of the trailer spaces taken that part of the value which was attributable to the swimming pool, recreation hall, house and other improvements, the landowners' appraisal was as fundamentally unfair and unjust as that of the State's in Defnet Land & Investment Co. v. State, ex rel. Herman, supra.

Reversed.

KRUCKER, C. J., and HATHAWAY, J., concur.

---

1. As to what are or what are not special benefits, see our decision in Taylor v. State ex rel. Herman, 12 Ariz.App. 27, 467 P.2d 251 (1970).

2. The City's appraiser testified that the value of the part taken was $8,032.86.