[L.A. No. 30037. In Bank. Dec. 22, 1972.]

CITY OF BALDWIN PARK, Plaintiff and Respondent, v.
BERTHA STOSKUS, Defendant and Appellant.

564

## COUNSEL

Renner, Cook, Shaykin, Lyon & Weltner, Weltner & Gorenfeld, William Gorenfeld and A. F. Weltner for Defendant and Appellant.

Fadem & Kanner, Desmond, Miller & Desmond, Thomas G. Baggot, O'Neill & Huxtable, Otto A. Jacobs, Robert H. Jacobs, Milnor E. Gleaves, Carlton, Borchard & Cowling, Thorpe, Sullivan, Clinnin & Workman, Jackson, Turner, Endeman & Mulcare, Goldstein, Barceloux & Goldstein, Malovos & Chasuk, John Thorne, Thomas Feeney and Gideon Kanner as Amici Curiae on behalf of Defendant and Appellant.

Robert Flandrick, City Attorney, Martin & Flandrick and Norman Lieberman for Plaintiff and Respondent.

F. Mackenzie Brown, Roscoe R. Hess, Wilson, Jones, Morton & Lynch and Michael R. Nave as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

**BURKE, J.**—In this case we consider the question whether an award of severance damages in an eminent domain proceeding should include the amount of a special assessment lien placed upon the condemnee's property to assist in financing the construction of a public improvement. We have concluded that the trial court properly refused to consider evidence of the assessment lien for purposes of measuring defendant's severance damages.

Plaintiff City of Baldwin Park ("City") filed a complaint in eminent domain on November 16, 1967, to obtain an easement for construction of a public street and storm drain over 11 parcels of land, each of which was part of a larger parcel. One of those parcels was owned by defendant Stoskus. The acquisition of the easement was undertaken following the formation of a special assessment district pursuant to the Improvement Act of 1911 (Sts. & Hy. Code, § 5000 et seq.), which district included the Stoskus property.[1] Upon completion of the construction, the amount of the assessment as to each property owner was calculated and confirmed by City following a public hearing. Although Stoskus objected to the amount of her assessment at the hearing, she took no action thereafter to set aside her assessment or challenge the validity of the district. (See Sts. & Hy. Code, § 5660.)

City's eminent domain action sought an easement over a 132-by-30-foot strip (3,960 sq. ft.) on the west side of the Stoskus property. Before the acquisition, that property measured 132 feet by 306.4 feet (40,444.8 sq. ft.). After the construction of the street, the property had double street frontage and could, according to the evidence, be developed into as many as five lots. City and Stoskus stipulated that the fair market value of the property acquired was $1,584, and the only issue for trial was the amount of severance damages, if any, to the remaining portion.

At trial, the court granted City's motion to strike all testimony relating to the amount of the assessment lien upon the Stoskus property, on the ground that such testimony was irrelevant to the issue of severance damages. Stoskus offered no further evidence on that issue, and City's expert testified that there were no severance damages since the remaining property

---

[1]In accordance with the act, a petition signed by the owners of 64.6 percent of the area of the property in the proposed district was presented to the City on January 4, 1967, requesting formation of the district. On October 4, 1967, a public hearing was held, at which owners of 21 percent of the property filed protests. Since those protests represented less than 50 percent of the property to be assessed, City created the district and authorized proceedings to acquire necessary easements. (See Sts. & Hy. Code, § 5222.)

was worth more after the construction of the street improvement than before, without considering any special benefits attributable to the improvement.[2] Accordingly, the trial court awarded Stoskus $1,584 for the easement acquired by City, but awarded no severance damages. Stoskus appeals, contending that the amount of the assessment lien should have been awarded as severance damages.

Section 1248, subdivision 2, of the Code of Civil Procedure requires the court, jury or referee in an eminent domain proceeding to make the following determination regarding severance damages: "If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff . . . ."

Heretofore, severance damages have been awarded when, as a direct result of the partial taking, the remaining property has suffered some physical impairment or disturbance which decreases the market value thereof. (See *People* v. *Symons,* 54 Cal.2d 855, 858-860 [9 Cal.Rptr. 363, 357 P.2d 451]; Cal. Condemnation Practice (Cont. Ed. Bar 1960) § 4.11 et seq.) For example, under appropriate circumstances severance damages may be recovered for loss of access, ingress or egress (see *People* ex rel. *Dept. Pub. Wks.* v. *Ramos,* 1 Cal.3d 261 [81 Cal.Rptr. 792, 460 P.2d 992]; *Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505]), impaired visibility to and from the highway (*People* v. *Ricciardi,* 23 Cal.2d 390, 399, 404 [144 P.2d 799]), loss of view (*Pierpont Inn, Inc.* v. *State of California,* 70 Cal.2d 282, 294-295 [74 Cal.Rptr. 521, 449 P.2d 737]), limited use to which remaining property could be put (see *Pacific Gas & Elec. Co.* v. *Hufford,* 49 Cal.2d 545 [319 P.2d 1033]; *San Bernardino County Flood Control Dist.* v. *Sweet,* 255 Cal.App.2d 889, 902 [63 Cal.

---

[2]City's appraiser Morriss testified that the fair market value of the Stoskus property was $16,250 prior to the taking of the easement, and $16,800 thereafter. Although Stoskus' counsel suggests that the "special benefits" attributable to the improvement are therefore only $550 (as compared to an assessment lien in the amount of $8,413.74), Morriss made it clear that he had not included in the $16,800 figure any special benefits attributable to the improvement, since "this was an assessment district and they [the owners] were paying for their own benefits, and I wouldn't want to offset any special benefits on severance." As we shall see, the matter of special benefits only becomes relevant as an offset against severance damages. (See Code Civ. Proc., § 1248, subd. 3.) Under the cases, special benefits may not be set off against severance damages where the improvement is financed by special assessment proceedings, since the property owners would, in effect, pay twice for such benefits. (*Oro Loma Sanitary Dist.* v. *Valley,* 86 Cal.App.2d 875, 882-884 [195 P.2d 913]; see Sts. & Hy. Code, § 4206, subd. (c); Jahr, Eminent Domain, § 110, p. 153; 3 Nichols, Eminent Domain, § 8.6209, p. 102.)

Rptr. 640]), loss of a citrus grove windbreak (*Ventura County Flood Control Dist.* v. *Security First Nat. Bank,* 15 Cal.App.3d 996, 1000-1001 [93 Cal.Rptr. 653]), increased flood hazard (*Colusa & Hamilton R. R. Co.* v. *Leonard,* 176 Cal. 109 [167 P. 878]), and even increased aircraft noise resulting from the acquisition of private airspace (see *City of Oakland* v. *Nutter,* 13 Cal.App.3d 752 [92 Cal.Rptr. 347]).

■ In the instant case, the imposition of an assessment lien upon defendant's property was not the direct result of the taking of an easement or construction of an improvement upon that property. Indeed, similar assessments presumably were levied upon *all* property in the district benefited by the improvement whether or not any portion of that property was taken. City therefore contends, and properly so, that the assessment lien should not be considered an item of "damages" under section 1248, subdivision 2.

A special assessment is generally acknowledged to be a function of the taxing power, not the power of eminent domain. (*Clute* v. *Turner,* 157 Cal. 73, 79-81 [106 P. 240]; 1 Nichols, *supra,* § 1.41[4], p. 85; Jahr, *supra,* § 5, pp. 11-12, § 110, pp. 152-153; Orgel, Valuation Under Eminent Domain (2d ed. 1953) § 253, p. 274; but cf. *Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 24, 29 [148 P. 217].) The assessment lien attaches to all property within the assessment district which is affected or benefited by the improvement, and not solely that property from which portions have been severed to construct the improvement. (See Sts. & Hy. Code, §§ 5341-5343; Orgel, *supra,* § 253, p. 274.) ■ As stated by Orgel, "The levying of special assessments while often coupled with the exercise of the power of eminent domain is in fact a function of the taxing power. . . . [I]t is not confined to owners part of whose property is taken, but it is a contribution which in theory at least is assessed against all properties deemed to be benefited by the improvement."

■ As indicated above, the justification for the imposition of a special assessment is that the property to be assessed will receive a special benefit over and above that received by the general public. (*City of Whittier* v. *Dixon,* 24 Cal.2d 664, 667 [151 P.2d 5, 153 A.L.R. 956]; *Irish* v. *Hahn,* 208 Cal. 339, 344 [281 P. 385, 66 A.L.R. 1382]; *Federal Construction Co.* v. *Ensign,* 59 Cal.App. 200, 209-210 [210 P. 536].) Of course, the amount of each individual assessment is not necessarily measured by the precise amount of "benefit" flowing to the property owner affected. The assessment is usually based upon the cost of the improvement, spread among the benefited property owners upon some equitable, nondiscriminatory basis. (See 1 Nichols, *supra,* § 1.41[4], pp. 81-82; Orgel, *supra,* § 253, p. 274.) The absence of an exact relationship between the assessment levied

and the benefit received will not, however, invalidate the assessment, at least in the absence of fraud, mistake or gross injustice. (*Larsen* v. *San Francisco,* 182 Cal. 1, 8-9, 14-16 [186 P. 757]; *Federal Construction Co.* v. *Ensign, supra,* 59 Cal.App. 200, 213-214; see 1 Nichols, *supra,* § 1.41[4], pp. 82-83; *Spring Street Co.* v. *City of Los Angeles, supra* [wholly arbitrary assessment held invalid].)

Thus, this court has stated that "The theory upon which such [special assessment] legislation is enacted is that the lands in the vicinity of a public improvement, and which are specially benefited by it, should pay the expenses of the making of the improvement, in proportion to the benefits received therefrom. This is all that the act [a similar act enacted in 1889] contemplates and provides for. No property of those within the district created to pay for the benefits conferred is taken." (*Clute* v. *Turner, supra,* 157 Cal. 73, 80.) ■ Of course, separate and apart from the assessment procedure, a municipality may exercise its power of eminent domain to acquire particular property to be used in constructing the proposed improvement. Yet the assessment lien arises independently of that acquisition. (*Clute* v. *Turner, supra;* see Sts. & Hy. Code, § 5372.)

■ Accordingly, it is the general rule that "where a part of a tract of land is taken for a public use, the mere fact that the remainder may thereafter be subject to assessment does not constitute an element of damages in condemnation proceedings." (Fn. omitted, 4A Nichols, *supra,* § 14.248[1], p. 14-348; accord, *City of Tuscon* v. *Rickles,* 15 Ariz.App. 244 [488 P.2d 180, 182]; *Del City* v. *Moore* (Okla.) 483 P.2d 324, 326; *State Highway Commission* v. *Donovan,* 152 Mont. 282 [448 P.2d 671, 673-674]; *City of Eugene* v. *Wiley,* 225 Ore. 327 [358 P.2d 286, 287-288]; *Application of City of Lincoln,* 161 Neb. 680 [74 N.W.2d 470, 472].)

The *Rickles* case, *supra,* held that evidence of the existence or nonexistence of a special assessment on the land remaining following a partial taking for eminent domain purposes is inadmissible, unless the municipality is seeking to deduct special benefits against severance damages. The court, disapproving contrary dictum in an earlier case, explained its holding by hypothesizing a street widening situation wherein property owners on one side of the street have none of their property taken and property owners on the other side have 10 feet of their property taken. "Those property owners who have none of their property taken are still burdened with the payment of the assessments, whereas those who have the ten feet taken would be able, under the [disapproved] rule . . . to recoup their assessment and end up, perhaps, paying nothing for the assessment. The injustice of the situation is further aggravated by the fact that in improvement districts it is quite common that those persons who do not border on the improve-

ment still must pay a proportionate but lower share of the assessment. . . . Such a situation is intolerable without even considering the fact that [such] a rule . . . could completely frustrate the taxing power of a municipality in street widening cases." (488 P.2d at p. 182.)

Other courts have pointed out that if some property owners were permitted to recoup their assessment in the form of severance damages, they would in essence achieve a double recovery, retaining the benefits attributable to the improvement without paying for them. (See *Application of City of Lincoln, supra,* 74 N.W.2d 470, 472, quoting from *In re Harrison Street,* 74 Wash. 187 [133 P. 8].)

Of course, as the court in *Rickles, supra,* explained, since the benefits which flow from the improvement are paid for in the form of a special assessment, the municipality may not seek to tax those benefits a second time by deducting their value from the award of severance damages in the form of "special benefits." ■ Although special benefits are ordinarily set off from severance damages (see Code Civ. Proc., § 1248, subd. 3; Cal. Const., art. I, § 14), the California courts recognize "the general principle of law condemning as double taxation a setoff of special benefits against severance damages where an original assessment was made." (*Oro Loma Sanitary Dist.* v. *Valley, supra,* 86 Cal.App.2d 875, 882; see fn. 2, *ante.*)

Defendant Stoskus contends that the application of the "no set-off" rule discussed above is inadequate protection for persons, such as herself, whose assessment assertedly[3] is greatly in excess of the benefits which will accrue to her from the improvement. She proposes a rule whereby the amount of severance damages would include the special assessment, less any such benefits. The difficulty with her proposal is that it would, in essence, permit a collateral attack upon the amount of the assessment, would unduly complicate eminent domain proceedings, and would defeat the purposes underlying the special assessment procedure.

■ It is well established that a property owner whose property becomes the subject of a special assessment must assert in timely fashion any invalidity or inequity of the proposed assessment, in accordance with statutory procedures created for that purpose. (See Sts. & Hy. Code, § 5660, requiring any action questioning an assessment to be commenced within 30 days after recording the warrant, diagram and assessment, and thereafter barring further attack upon the assessment; *Noyes* v. *Chambers & DeGolyer,* 202 Cal. 542, 544-545 [261 P. 1006]; *Irish* v. *Hahn, supra,*

---

[3]As noted above (fn. 2), no evidence was in fact introduced regarding the value of the benefits which would accrue to the remaining Stoskus property by reason of the improvement.

208 Cal. 339, 346-347; *Duncan* v. *Ramish,* 142 Cal. 686 [76 P. 661]; 14 McQuillan, Municipal Corporations, § 38.188.) Under the rule proposed by defendant, the court in an eminent domain proceeding would allow the property owner to collaterally attack the prior assessment by showing that it exceeds the amount of benefits accruing from the improvement, and by awarding the excess as severance damages. Yet, by virtue of the foregoing authorities, the determination that the affected property has been benefited, at least to the extent of the assessment, has become final and conclusive.

In addition to circumventing the rules governing the finality of assessment proceeding, defendant's proposal would unduly complicate eminent domain proceedings by requiring the introduction of evidence not heretofore relevant, namely, the amount of the assessment and off-setting benefits. As these benefits are typically indirect or long-term ones, involving such factors as enhanced possibilities of development, changes in land use, and increased living standards, such a determination could be an extremely complicated one. (See *Federal Construction Co.* v. *Ensign, supra,* 59 Cal.App. 200, 212-213; 14 McQuillan, *supra,* § 38.33, pp. 125-126.)

Finally, were we to accept defendant's proposal, we might thereby severely reduce the value of the special assessment device as a means of financing public improvements. In order to raise additional sums to replace assessment funds awarded as severance damages to affected property owners, the municipality either would have to attempt to reassess and increase the assessment lien upon the remaining property in the district, or pay the difference out of any available general funds. (See Sts. & Hy. Code, § 5520 et seq.; *Mardis* v. *McCarthy,* 162 Cal. 94, 104 [121 P. 389].) Any such supplemental assessment could work a hardship upon the remaining property owners, while a payment from general funds could substantially prejudice the municipality and its taxpayers.

Therefore, we conclude that it would be unnecessary and unwise to adopt a rule whereby evidence of a special assessment is relevant in measuring severance damages. The trial court in the instant case properly refused to consider such evidence.

The judgment is affirmed. Defendant Stoskus is to recover costs. (*Klopping* v. *City of Whittier* (1972) *ante,* pp. 39, 59 [104 Cal.Rptr. 1, 500 P.2d 1345]; *People* ex rel. *Dept. Pub. Wks.* v. *International Tel. & Tel. Corp.* (1972) 26 Cal.App.3d 549 [103 Cal.Rptr. 63].)

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

Appellant's petition for a rehearing was denied January 24, 1973, and the judgment was modified to read as printed above.