510 P.2d 764

**CITY OF TUCSON, a municipal corporation, Appellant,**

v.

**Charles L. ALLEN, husband of Mary E. Allen, in his sole and separate right, Appellee.**

**No. 2 CA–CIV 1323.**

Court of Appeals of Arizona, Division 2.

June 5, 1973.

Rehearing Denied July 3, 1973.

Review Denied July 17, 1973.

Herbert E. Williams, City Atty., City of Tucson by J. Dan O'Neill, Asst. City Atty., Tucson, for appellant.

Stubbs & Stephens, P. C., by Robert C. Stubbs, and James C. Stephens, Tucson, for appellee.

HOWARD, Judge.

A condemnation award of $98,064 for the taking by the City of Tucson of 112 subdivision lots belonging to Mr. Allen is the subject of this appeal. The subject property located east of Silverbell Road and north of West Speedway was acquired by the City for the purpose of developing a large park. The 112 lots were lots 178 through 210 inclusive, lots 213 through 236 inclusive, and lots 241 through 295 inclusive of Silvercroft Addition, a platted and partially developed subdivision. In January, 1961, streets, alleys, easements and drainage ways were dedicated to the public use and the subdivision plat, including the dedication, was approved and recorded in February, 1961. Several lots in the subdivision were sold prior to June, 1969, when Mr. Allen purchased the remaining 112 lots.

Prior to trial, the City filed a motion in limine requesting that valuation testimony "should be limited to the value of individual lots themselves and values per acre or per square feet comprising the lots condemned should be inadmissable [sic] as a matter of law." The motion was denied and the City's sole complaint on appeal is directed to the allowance of certain expert appraisal testimony. The gravamen of its argument is that the property owner was awarded compensation for land no longer owned by him, i. e. the land dedicated in 1961 to the public use. We are unable to agree with the City's position.

■ The Arizona Constitution mandates payment of just compensation to one whose land is taken by the State. Arizona Constitution, Article 2, Section 17, A.R.S. "Just compensation" is the equivalent in money which places the property owner in as good a position financially as he would have been if his property had not been taken by eminent domain. Defnet Land & Investment Company v. State ex rel. Herman, 103 Ariz. 388, 442 P.2d 835 (1968). Valuation is determined by the market value of the property—by what a willing buyer would pay and a willing seller would accept. Defnet, supra; City of Phoenix v. Consolidated Water Company, 101 Ariz. 43, 415 P.2d 866 (1966).

The valuation method used by the witness for the property owner is as follows. He used 12 comparable sales, six of which were sales of property which had not been subdivided. After analyzing these comparables which ranged from 8.8 acres to 56 acres, he concluded that a willing purchaser, in deciding how much he would pay for the 112 lots (five of which were fully de-

**136**

veloped) would consider the following: (1) How much land he would have to acquire in the area in a raw, unsubdivided state; (2) what portion thereof he would be required to dedicate to the public for roads, drainage ways and alleys; and (3) engineering costs.

The subdivision involved here consisted of approximately 33 acres in its raw acreage state. Approximately ten acres had been dedicated to the public use and therefore, the net acreage of the 112 lots amounted to approximately 23 acres. The landowner's expert witness did not, as contended by the City, include property already belonging to the City in his opinion of value. He valued the 112 lots at $1,145 each. In arriving at this estimate of value per lot he utilized the following method—How much would a potential subdivider-developer be willing to pay for 112 existing subdivision lots *in toto*? He was of the opinion that a developer would realize that 33 acres would be necessary, allowing for roads, drainage ways and alleys, in order to obtain 112 lots of the size and dimensions of the subject lots. Based on the comparable raw acreage sales and the selling price of other individual, developed lots in the area, he concluded that a prospective purchaser would pay $3,500 per acre for the gross acreage of 33.4 acres. He also estimated that the engineering cost for the development already completed was $100 per lot, making a total of $11,200 for the 112 lots. His opinion of the fair market value of the subject property at the time of taking was $128,156, the total of $116,956 for 33.416 acres and $11,200 for engineering costs.

We find no merit in the City's argument that it was required to pay for property already belonging to it. The use of gross acreage as a basis for an opinion of what would be "just compensation" under the circumstances presented here was not improper.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.