The **PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee,**

v.

**FIFTY ASSOCIATES, Defendant-Appellant.**

**No. 73–1419.**

United States Court of Appeals, Ninth Circuit.

Oct. 1, 1974.

James Powers (argued), of Powers, Boutell, Fannin & Kurn, Phoenix, Ariz., for defendant-appellant.

Phillip E. von Ammon (argued), of Fennemore, Craig, von Ammon & Udall, Phoenix, Ariz., for plaintiff-appellee.

OPINION

Before BARNES and CARTER, Circuit Judges, and LINDBERG,* District Judge.

JAMES M. CARTER, Circuit Judge:

This case presents the question of whether the mortgagee (appellee) or the land owner-mortgagor (appellant) is entitled to the rents from the encumbered land, collected by a receiver, between the date of the filing of a foreclosure by the mortgagee and the date of foreclosure sale. We decide in favor of the mortgagee (appellee) and affirm.

This is the third go-around in the case of Fifty Associates v. The Prudential

* Honorable William J. Lindberg, Senior United States District Judge, Western District of Washington, sitting by designation.

Insurance Company of America, 446 F. 2d 1187 (9 Cir. 1970); and 450 F.2d (9 Cir. 1971). Neither prior case has any real bearing on the present question.

## FACTS

Fifty Associates (hereafter "Fifty") in 1959 owned the fee interest in real property in Phoenix, Arizona, and leased the same to Mayer Central Building Corp. (hereafter "Mayer") for 99 years. The lease required Fifty to subject its fee interest to a loan from The Prudential Insurance Company of America (hereafter "Prudential") for $2,500,000 for the construction of an eight-story building to be built on the leased premises. In 1960, Fifty executed the mortgage to Prudential for the $2,500,000 and thereby subjected its fee interest to the mortgage. Mayer also executed the mortgage and signed the mortgage note. Prudential lent the money to Mayer and Mayer built the building.

The mortgagor conveyed the fee to Prudential as security for the loan. It contained a clause that Mayer and Fifty mortgaged the property to Prudential "together with all appurtenances thereto and improvements thereon, and all the rents, issues and profits thereof . . . ."

The lease had a further proviso requiring Fifty to subject its fee interest to a subsequent mortgage if Mayer desired to refinance or construct additions on the premises.

In 1962, Mayer undertook a refinancing prusuant to the proviso. In the refinancing, Mayer applied for a new loan and mortgage from Prudential. $3,400,000 of this loan was to be secured by the fee interest owned by Fifty and leased to Mayer. Four loan documents were prepared for execution by Mayer and Fifty, but Fifty refused to execute any of the four except the new mortgage. On November 20, 1962, Fifth and Mayer executed the new mortgage.

The new mortgage had a clause similar to that in the first mortgage providing that Mayer and Fifty mortgaged the real property to Prudential "together with all appurtenances thereto and improvements thereon, and all the rents, issues and profits thereof . . . ."

Another clause in the new mortgage provided that in any action to foreclose the mortgage "a receiver shall, upon application of the plaintiff in such action (Prudential) . . . be appointed by the court . . . " to collect the rents, issues and profits and apply them to the payment of the mortgage "and interests, taxes and other charges" becoming due during the pendency of the action and "until sale be finally made and a deed made and delivered thereunder."

The three other documents which Fifty refused to sign were (1) the promissory note; (Fifty did not sign the note for the original mortgage and had no personal liability for the loan); (2) a document entitled "Conditional Assignment of Rentals"; and (3) a document entitled "Assignment of Lease and Agreement." The latter two, states appellant, "dealt with the rents payable by tenants in the building."

At the instance of Fifty, a clause was inserted in the new mortgage, reading:

"Notwithstanding anything to the contrary contained herein, Fifty Associates has executed these presents for the *sole purpose* of creating the lien and right of lien set forth herein *against its fee interest* and this instrument creates no additional or personal liability in Fifty Associates and no personal judgment for any money deficiencies shall be sought or obtained against Fifty Associates." (Emphasis added)

Thereafter, Mayer defaulted on the installment payment due Prudential in February 1965 and continued in default thereafter. In July 1965, Prudential notified Fifty that Mayer was in default and that it had elected to accelerate the debt and intended to foreclose the mortgage after the expiration of a ten-day period, during which Fifty could reinstate the loan. Fifty did not reinstate the loan.

On July 15, 1965, Mayer filed a petition for reorganization under Chapter X of the Bankruptcy Act and the district court issued a stay order. The bankruptcy court controlled the property until May 29, 1967. By an order on that date the property was turned over to Fifty, subject only to the rights of Prudential.

The ground rent due to Fifty from Mayer was paid through July 1965. From July 1965 to November 18, 1966, Fifty continued to receive its ground rent from a creditor of Mayer who held a second mortgage on Mayer's leasehold estate and desired to keep it intact.

At the conclusion of the bankruptcy proceedings, Fifty applied for and received as an expense of administration the remaining unpaid ground rent. Fifty thus received all the rents it was entitled to through the end of May 1967.

On May 29, 1967, Prudential filed an action to foreclose and applied for the appointment of a receiver to take over, operate the property, and collect the rents. By stipulation of the parties a receiver was appointed by order of June 22, 1967, effective June 13, 1967.

The district court entered a summary judgment of foreclosure. The two prior appeals mentioned above intervened. The second appeal, 450 F.2d 1007, affirmed the summary judgment.

Finally, Fifty and Prudential agreed that Fifty would give Prudential a deed in lieu of foreclosure sale and the remaining issues could be decided as though a Marshal's sale took place on March 31, 1971, on Prudential's bid of $3,277,610.24. After applying this agreed bid price to the foreclosure judgment, there remained a deficiency to Prudential of $1,600,000.

The court order appointing the receiver expressly provided it would not be deemed an adjudication as to which party, Prudential or Fifty, would be entitled to the funds collected by the receiver, and such issue was postponed until further order of the court. The judgment of foreclosure had a similar reservation.

The receiver accumulated from rents the net sum of $322,779. By agreement of the parties concerning credits, the net balance is $290,849. The district court awarded the sum to Prudential. This is the judgment now on appeal.

## DISCUSSION

Jurisdiction of this action is based on diversity of citizenship of the parties. Both parties agree that Arizona law controls.

A.R.S. § 33–703A provides: "A mortgage is a lien upon everything that would pass by a grant of the property, but does not entitle the mortgagee to possession of the property unless authorized by the express terms of the mortgage."

The mortgage executed by Fifty created a lien on the fee to the mortgaged property including, by definition, a lien on the rents and issues which were part of the fee interest. In re Forsstrom, 44 Ariz. 472, 38 P.2d 878 (1934), overruled on other grounds, County of Mohave v. Chamberlin, 78 Ariz. 422, 281 P.2d 128 (1955) and State v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960).

Valley National Bank v. Avco Development Co., 14 Ariz.App. 56, 480 P.2d 671 (1971) holds that the right to unaccrued rents from a lease of real property is a hereditament within the meaning of the statutory definition of real property as "coextensive with lands, tenements and hereditaments." [A.R.S. § 1–215(25)]

Fifty had acknowledged that the rents from the property are part of the fee interest. In its brief it states that Fifty "[a]s owner . . . was entitled to the benefits of ownership, including the rights to rent."

Wingfoot California Homes Co. v. Valley National Bank, 74 Ariz. 287, 248 P.2d 738 (1952) relied on a part of an earlier statute, Section 62–503, A.C.A. (1939) reading identically with A.R.S. §

33–703A, quoted *supra*. *Wingfoot* held at p. 289, 248 P.2d at p. 739:

By this section, then, it can readily be seen that if in its opinion a receiver is necessary for the protection and preservation of the property, the court has jurisdiction to appoint a receiver in the instant case to take possession of the mortgaged property for the benefit of the mortgagee. The above statute confers upon the court the jurisdiction to appoint a receiver if conditions warrant it. The mortgages sought to be foreclosed included the "rents, issues, and profits", and also provided "that in any action to foreclose this mortgage a receiver shall, upon the application of the plaintiff in such action and without notice to the defendants, be appointed by the court to take charge of said property. * * * "

In cases in other jurisdictions involving clauses in mortgages assigning rents and providing for the appointment of a receiver in the event of default by the mortgagor, courts have held that the mortgage creates a lien on the rents in favor of the lender as additional primary security for the loan. Mortgage Guarantee Co. v. Sampsell, 51 Cal.App. 2d 180, 124 P.2d 353 (1942); Randall v. Jersey Mortgage Investment Co., 306 Pa. 1, 158 A. 865 (1932) (mortgage language conveying "rents, issues and profits" was alone sufficient to create a pledge of rents to the mortgagee).

Other courts have held that a receivership clause alone creates an assignment of rents to the mortgagee enforceable on appointment of a receiver. Wilson v. Tolles, 210 Iowa 1218, 229 N.W. 724 (1930): 2 Glenn, Mortgages § 175 (1943).

In re Ventura-Louise Properties, 490 F.2d 1141 (9 Cir. 1974) applied California law and distinguished between an outright assignment of rents and an assignment of rents for security purposes only. The case held that the provision in the assignment authorizing the beneficiary of the trust deed to "enter" on the premises and "operate and manage" the same made the assignment outright rather than an assignment for security only. (p. 1144) The court further noted that a demand for possession would have perfected the assignment, had it been for security only. (p. 1145)

■ Generally, the mortgagee is not entitled to receive the rents from mortgaged property prior to a default or commencement of foreclosure proceedings. However, the mortgage lien on such rents ripens upon the appointment of a receiver. 2 Glenn, Mortgages § 175 (1943); Osborn, Mortgages § 150 (2d Ed.) (1970). In Kinniston v. Guaranty Liquidating Corp., 18 Cal.2d 256, 261, 115 P.2d 450, (1941), a pledge of rents, as distinguished from an outright assignment, was held to give the mortgagee the right to the rents when he secures possession of the property or secures an appointment of a receiver to collect the rents.

■ Here the mortgage contained both an assignment of rents and a provision for the appointment of a receiver. A receiver was appointed. Regardless of the character of the assignment (outright assignment, or pledge or assignment for security) the appointment of the receiver would perfect the right of the mortgagee to the rents. We think *Wingfoot, supra,* so holds.

Fifty's reliance on Dart v. Western Savings & Loan Association, 103 Ariz. 170, 438 P.2d 407 (1968), as limiting *Wingfoot*, is misplaced. The court in *Dart* simply concluded that the facts did not warrant the appointment of a receiver.

■ Prudential's judgment awarding it the rents is not a personal deficiency judgment contrary to the inserted clause insulating Fifty from liability. Mortgage Guarantee Co. v. Sampsell, 51 Cal. App.2d 180, 124 P.2d 353 (1942). In that California case, where the deed of trust contained rents and receivership clauses, the court awarded the rents to the beneficiary of the deed of trust. The court held the clauses created a lien

on rents as primary security for the loan and that therefore the award of rents was not a personal deficiency judgment in violation of California's anti-deficiency statute.

We think the highest Arizona court would not hold that the award of rents to Prudential constituted a personal deficiency judgment against Fifty, in violation of the inserted clause, insulating Fifty from personal liability.

■ Fifty contends that notwithstanding the plain language of the statute assigning rents, Prudential had no lien on rentals from the property *after* the termination of the Mayer lease, *i. e.,* that the only rents subject to Prudential's lien were those directly payable to Mayer.

Such a contention would do violence to Fifty's general assignment of rents from the property. Fifty, as fee owner before the new mortgage was executed, had a right to *all* the rents from the property.

By the new mortgage it assigned the rents to Prudential. Fifty therefore would have the court read into the assignment language to the effect that (1) the rents assigned were only the rents from leases made by Mayer, and (2) the assignment was valid only as long as Fifty did not terminate Mayer's lease. To state the contention is to demonstrate its absurdity. In fact, Valley National Bank v. Avco, *supra,* held that rents from land were a species of property, a hereditament within the definition of real property in A.R.S. § 1-215(25).

■■ Finally, the receiver was properly appointed. Arizona law holds that "[the] parties may not by contract or stipulation confer jurisdiction on a court" to appoint a receiver, and that the right to appoint a receiver must exist under law independent of a contract. *Wingfoot, supra,* 74 Ariz. at 289, 248 P. 2d at 738.

Here, when Prudential applied for a receiver, the unpaid indebtedness was $3,277,610, with accrued interest of $655,500. Fifty conceded that the security was inadequate. Mayer was insolvent, and under the mortgage Fifty had no obligation for any deficiency. A receiver was necessary and proper. *Wingfoot, supra,* approved the appointment of a receiver to collect rent. "Where there is danger of a loss to the mortgagee the court acts within its discretion to appoint a receiver." *Wingfoot, id.,* 74 Ariz. at p. 290, 248 P.2d at 739.

Judgment affirmed.