[Civil No. 3599. Filed May 24, 1937.]

[68 Pac. (2d) 340.]

MORTGAGE INVESTMENT COMPANY OF EL PASO, TEXAS, a Corporation, Appellant, v. MAE TAYLOR, Appellee.

Mr. Thomas W. Nealon, for Appellant.

Mr. Henderson Stockton, Mr. Emmett R. Feighner and Mr. Eli Gorodezky, for Appellee.

ROSS, J.—This action by the Mortgage Investment Company of El Paso, Texas, against Mae Taylor was filed February 5, 1934, and is for rent for the Westward Ho Apartments, located on lots 20 and 22 block B, Bennett Place, Phoenix. The pleadings are very voluminous and we set forth only their substance. These facts appear in the pleadings:

The Phoenix Land & Investment Company bought lots 20 and 22 and built the apartment house (containing 29 apartments) thereon, in pursuance of a written lease dated May 10, 1929, between it and the defendant in which defendant bound herself to pay the Phoenix Land & Investment Company $1,000 per month for ten years from date apartments were finished and ready for occupancy. On the date of such lease defendant paid lessor $10,000, one-half of which was to be applied in payment of the first five months' rent and the balance on the last five months'. The building was finished and occupied by defendant October 12, 1929, from which date the rent ran.

On September 30, 1930, the Phoenix Land & Investment Company deeded the premises to the Phoenix Investment & Development Company, but before this was done the former company, on July 18, 1930, mortgaged the apartment house and lots, including the income and rents thereof, and on July 25, 1930, assigned the lease to the Marr Mortgage Company as security for a loan of $45,000, evidenced by the mortgagor's negotiable coupon notes with the right to the mortgagor to collect and use the income and rents so long as there was no default in payments on the mortgage.

January 3, 1933, the Marr Mortgage Company assigned the lease and all rents due thereunder, or to become due, to the plaintiff and on July 8, 1933, it

assigned to plaintiff its mortgage upon which at the time there was an unpaid balance of $40,000.

It is alleged that after April 1, 1932, defendant defaulted in the payment of rent and thereafter paid only $2,790 on account of rent, leaving a balance at the date of filing complaint of $20,210.

Defendant in her answer admits the making of the lease as alleged in the complaint and sets forth that before the work of constructing the apartments was commenced, or soon thereafter, by mutual agreement the plans and specifications were changed to make the apartments more desirable and more comfortable and because of the added cost of such changes it was agreed that the rent should be $1125 per month instead of $1,000, and that a new written lease should be made covering such changes, such new lease to be prepared by the Phoenix Land & Investment Company; that, although defendant frequently requested such company to prepare a new lease in accordance with its agreement, it failed and neglected to do so and as a consequence she occupied the premises under the verbal substituted lease, which was the same as the written except as specified. She alleges that she paid the Phoenix Land & Investment Company the rent, at $1125 per month, until April 1, 1932, at which time the rent was in arrears in approximately the sum of $5,000; that on said date she and the Phoenix Investment & Development Company, which had become the owner of the property under date of September 30, 1930, entered into a verbal contract under which it was agreed that the $5,000 which she had paid to the Phoenix Land & Investment Company to be applied on the last five months of the original lease should be applied to satisfy her arrearages on the substituted lease up to April 1, 1932, and that thereafter she should act as manager of the property for the Phoenix Investment

& Development Company, receiving for her services the sum of $150 per month.

Defendant by way of cross-complaint alleged that on or about April 1, 1932, she and the Phoenix Investment & Development Company, the owner of the property, entered into an agreement concerning the use and occupancy of the Westward Ho Apartments, by the terms of which she would thereafter receive "for her services in managing and conducting apartment house" $150 per month; that the Phoenix Investment & Development Company should have all the income of the business and pay all the expenses thereof, including taxes on certain enumerated furniture in the apartments amounting to $1739.45; that it failed to pay said taxes and also the sum of $692.61 operating expenses; that plaintiff knew of the Phoenix Investment & Development Company's agreement to pay taxes and operating expenses and with said knowledge accepted moneys from said company paid to it by defendant; and that by reason thereof defendant should be allowed a set-off of the said taxes and operating expenses.

Plaintiff filed a general demurrer to the cross-complaint and the order overruling it is the plaintiff's first assignment of error.

The case was tried to a jury on special interrogatories and the court adopted the jury's findings and made additional findings of fact and concluded therefrom that the plaintiff should take nothing against defendant, and that defendant was entitled to judgment against plaintiff on her cross-complaint for the sum of $2,432.06, and entered judgment accordingly. Plaintiff has appealed, assigning fifty-four reasons therefor which have been reduced to twenty-one propositions of law. What these are, or some of them, will appear from our opinion herein. We shall refer to the parties as they were below, as plaintiff and de-

fendant; to the Phoenix Land & Investment Company as mortgagor or lessor, and to its successor, the Phoenix Investment & Development Company, as landlord.

■ It seems obvious that the court should have sustained the plaintiff's general demurrer to defendant's cross-complaint. The right to counterclaim is regulated by statute. Section 3785, Rev. Code 1928. The pertinent part of this section reads:

"The counterclaim must be an existing one in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and must be: A cause of action arising out of the contract or transaction pleaded in the complaint, or connected with the subject of the action; or, in an action arising on a contract, another cause of action arising also on a contract, and existing when the action was begun."

It is not alleged in the cross-complaint that plaintiff had agreed with defendant to pay her the tax item or the operating expenses of the apartment while under the management of defendant. Under the allegations, these were the obligations of the landlord and for a breach thereof defendant, if she had a cause of action at all, had one against the landlord and not the plaintiff, assignee of the mortgage. If the landlord applied moneys paid it by defendant on the mortgage instead of paying the taxes and operating expenses of the apartment house, it might give rise to a cause of action against the landlord and in favor of defendant, but not against the mortgagee or its assignee. And the fact that the latter happened to know that the money paid it was money obtained by the landlord from the defendant and should be applied to payment of taxes and operation would not make plaintiff a trustee of such fund for defendant. We cannot see upon what theory the defendant could expect to recover "a several judgment" against plaintiff on the state of facts alleged in the cross-complaint. It is

not sufficient that the facts upon which defendant bases her cause of action may have arisen out of the transaction between the lessor and the landlord on the one hand and the defendant on the other. Such facts must be such as to create a cause of action against the plaintiff and in favor of defendant before the latter can counterclaim when sued for rent. Clearly, under the facts alleged, defendant could not maintain an action against plaintiff for money had and received. It was not her money that the plaintiff received from the landlord, but the latter's money and, because the landlord preferred the plaintiff to the defendant in paying it out, would not entitle the defendant to recover such payment from plaintiff. Debtors frequently make preferences in payments to their creditors and they may legally do so.

The general demurrer to the cross-complaint should have been sustained.

We have come to the conclusion that it is not necessary to pass upon the many questions raised by plaintiff in the trial of its action against defendant. It would, of course, be necessary to pass upon such questions if it appeared that the plaintiff's mortgage was unsatisfied, but if its mortgage has been paid, then whether errors were committed against the plaintiff in such trial cannot affect the result, for payment of the mortgage and the mortgage notes would have the effect of releasing the security.

■ The plaintiff prosecutes the action to recover the rents from defendant on the theory (1) that the mortgage covered the rents and (2) as assignee of the lease. It was entitled to the rents under both theories as long as its mortgage was unpaid. The title to mortgaged property under our law remains in the mortgagor. The mortgagee's interest is that of a lienor. Of course, payment of the mortgage would release the mortgaged property and, since the

assignment of the lease was for additional security to the mortgage debt, the satisfaction of the debt would also release the additional security. The record conclusively shows that plaintiff had foreclosed its mortgage in the United States District Court for Arizona; that at the foreclosure sale it had bought in the property, including the lease, for the full amount of the judgment, costs, and accruing costs; and that the sale had been reported to the court and confirmed and satisfaction of judgment entered.

Thus it is plaintiff is to be the owner of the property bought at such sale, unless the property is redeemed by the mortgagor or its assignee or other redemptioner. If it is redeemed, the redemption money will be applied to the satisfaction of plaintiff's demands; so, whatever happens, the plaintiff gets the property or the face of the judgment with accruing interest and costs.

It is true the plaintiff will, under section 4234, Revised Code 1928, in the event the property is redeemed, have to account to the redemptioner for rents or the value of the use and occupation of the premises until the redemption, but the purchaser need not make such an accounting if there is no redemption. Because the statute provides that the redemptioner shall be entitled to the rents of the premises or the value of its use, plaintiff contends the law imposes the duty upon it to collect such rent from the tenant, and that this action is in the interests of the mortgagor and should be maintainable for that reason. The provisions of the law make the purchaser responsible to the redemptioner for rents or use of property until redeemed, but do not make it his duty to rent the property and collect rents therefor or to occupy and use it. It is a personal liability of the purchaser, regardless of whether he rents the premises or occupies them. He may rent them or he may use and occupy them.

At all events, if the property is redeemed, he must account therefor to the redemptioner, but this is his personal obligation.

■ The court, in the case of *Plains Loan, Realty & Investment Co.* v. *Hood*, 76 Colo. 322, 230 Pac. 1008, 1010, had under consideration a question very similar to the one here and it was there said:

"When the mortgagee in this case bid at the foreclosure sale the entire amount of the mortgage debt, including the costs and expenses of the foreclosure, and paid or made good its bid by surrendering and canceling the note and mortgage and accepting in lieu thereof the trustee's certificate of purchase, this transaction constituted a payment in full of the mortgage indebtedness, in the event the mortgagor did not redeem, and, if he did redeem, the debt would be paid out of the redemption money. In other words, the mortgage debt was, or would be, paid in full as a result of the foreclosure sale. Any right of the mortgagee in and to the premises or possession thereof, or the right to apply rents and profits to the mortgage debt, existed only so long as the debt itself existed and the security was in force; and when that debt was canceled and the note, the evidence thereof, and the trust deed were surrendered and canceled all rights of the mortgagee conferred by the mortgage, including the right of possession and rents and profits, if any, necessarily ceased to exist and were extinguished, and the statute giving to the mortgagee right of possession until the redemption period expired, revived, if it had been suspended. It is no sufficient answer, under the facts in this record, to say that the mortgagee's right to the use and possession at once, upon the default of the mortgagor to observe the prescribed covenants, arose, and therefore the mortgagee was entitled to the rents and profits during the period of equity of redemption."

This action is not brought by the plaintiff as the owner of the property but as the assignee or lienor, and it is clear that it had no lien, nor did it have any

claim on the lease, for its only interest in the lease was security for a debt and when the debt was paid or satisfied, it had no further interest in the lease and its rights under the mortgage ended.

The judgment as to plaintiff's cause of action against the defendant is affirmed, and the judgment on cross-complaint in favor of defendant is reversed and the cause remanded with directions that the demurrer thereto be sustained and cross-complaint dismissed.

McALISTER, C. J., and LOCKWOOD, J., concur.